## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

DISOLE LLC,

      Plaintiff,                                              **CLASS ACTION**

v.                                                                     **JURY DEMAND**

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY d/b/a
CHUBB,

      Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff DiSole LLC ("DiSole" or "Plaintiff"), on behalf of itself and all others similarly situated, states as follows for its Complaint against Defendant Westchester Surplus Lines Insurance Company d/b/a Chubb ("Defendant"):

### INTRODUCTION

1.     This is a class action brought by Plaintiff DiSole against Defendant Chubb, related to insurance policies that insure Plaintiff's properties, business operations, and potential liability in connection with Plaintiff's business operations. These insurance policies include Business Income coverage, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority, and contains no relevant virus exclusion.

2.     Plaintiff is a small business that purchased Defendant's insurance policy and made premium payments for a policy that, in the event of a catastrophe requiring a shutdown of business operations, would require Defendant to honor its contractual obligation to provide coverage. In March 2020, such a catastrophe took place when Plaintiff was forced to close its inn due to the

COVID-19 pandemic. All across the country, including in Florida, government authorities issued closure orders to businesses, including the business operated by DiSole, in an effort to stop the rapid spread of the deadly COVID-19 virus. Orders from Civil Authorities requiring businesses to close have resulted in massive losses to businesses throughout the country. As a result, many insureds, including Plaintiff, filed claims for Business Income coverage, Extra Expense coverage, and coverage for losses due to the actions of a Civil Authority.

3.      In response to the business interruption claims filed by Plaintiff and thousands of other class members resulting from the COVID-19 pandemic, Defendant has systematically denied and continues to deny and refuse to provide payment for insurance claims for coverage for similar losses and expenses by insureds holding policies that are, in all material respects, identical. Defendant's decision to not provide coverage and/or its decision to refuse to pay claims under the common policy forms issued to Plaintiff and the putative class members constitutes a breach of contract and provides them with the right to seek a declaratory judgment pursuant to 28 U.S.C. § 2201(a) on behalf of itself and the class members establishing that they are entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the businesses losses it has sustained.

**PARTIES, JURISDICTION AND VENUE**

4.      Plaintiff DiSole is a limited liability company organized under Florida law with its principal place of business located at 730 S Dixie Highway, Coral Gables FL 33146. DiSole operates an inn. One or more of the members of DiSole are citizens of Florida.

5.      Defendant Chubb is a Georgia business corporation with its principal place of business at 500 Colonial Center Parkway, Suite 200, Roswell, Georgia 30076. Chubb is an insurance company engaged in the business of selling insurance contracts to commercial entities

such as Plaintiff in Florida and in all fifty states, including in states like Florida, and including by and through its wholly-owned subsidiaries.

6.      At all times material, Defendant engaged in substantial and not isolated activity on a continuous and systematic basis in the state of Florida by issuing and selling insurance policies in Florida and by contracting to insure property located in Florida.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy exceeds $75,000.

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because there is diversity between Defendant and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claim occurred in this district and/or a substantial party of the property that is the subject of the action is situated in this district.

10.      This Court has personal jurisdiction over Defendant because Plaintiff's claims arise out of, among other things, Defendant conducting, engaging in, and/or carrying on business in Florida; Defendant breaching a contract in this state by failing to perform acts required by contract to be performed in this state; and Defendant contracting to insure property in Florida. Defendant also purposefully availed themselves of the opportunity of conducting activities in the state of Florida by marketing its insurance policies and services within the state, and intentionally

developing relationships with brokers, agents, and customers within the state to insure property within the state, all of which resulted in the policy at issue in this action.

**FACTUAL BACKGROUND**

**A.  *Insurance Coverage***

11.     On or about May 10, 2019, DiSole purchased the Policy, a property insurance policy issued and underwritten by Defendant. The insured premises under the policy is 730 S Dixie Highway, Coral Gables FL 33146. A copy of the DiSole Policy is attached as Exhibit A.

12.     The Policy uses standard common forms that contain the same and/or substantially similar provisions at issue in this action as those issues by Defendant to the members of the putative class as defined herein.

13.     The Policy is an all-risk insurance policy. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

14.     In accordance with the all-risk nature of the Policy, Defendant agreed to pay for all losses caused by a "Covered Cause of Loss," which means "direct physical loss unless the loss is excluded or limited in this Policy."

15.     One type of coverage provided by the Policy is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in a section of the Policy titled "Business Income (And Extra Expense) Coverage Form."

16.     Pursuant to this coverage, Defendant promised to pay for "Loss of Business Income" caused by a Covered Cause of Loss. Specifically, Defendant promised to pay for the "actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration.'"

17.     The Policy defines "Business Income" as "a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and b. Continuing normal operating expenses incurred, including payroll."

18.     "Suspension" means, among other things, "a. The partial slowdown or complete cessation of your business activities or b. That a part or all of the described premises is rendered untenantable, if coverage from Business Income Including 'Rental Value' or 'Rental Value' applies."

19.     "Period of Restoration" means the period of time that:

    a.  Begins:

        (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

        (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

        caused by or resulting from and Covered Cause of Loss at the described premises; and

    b.  Ends on the earlier of:

        (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2) The date when business is resumed at a new, permanent location.

20.     Additionally, under the Policy, Defendant also promised to cover "Extended Business Income." This coverage requires Defendant to pay for loss of business income beyond the Period of Restoration under certain conditions.

21.     The Policy also provides a coverage for extra expenses in a section titled "Extra Expense." Pursuant to this section of the Policy, Defendant promised to pay for "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property caused by or resulting from a Covered Cause of Loss."

22.     The Policy also provides "Civil Authority" coverage, as follows:

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

23.     The Civil Authority coverage is an independent basis for business interruption coverage that can be triggered even when the standard business interruption coverage is not.

24.     Plaintiff's Policy does not contain any exclusion that would apply to allow Defendant to deny coverage for losses caused by the interruption of Plaintiff's business and the actions of civil authorities.

25.     The Policy does not contain any exclusion which would apply to allow Defendant to completely deny coverage for losses caused by COVID-19 and related actions of civil authorities taken in response to COVID-19.

26.     Because the Policy is an all-risk policy and does not exclude Plaintiff's losses, Plaintiff's losses are covered up to the applicable limits of insurance.

**B. *The COVID-19 Pandemic***

27.     COVID-19 is a novel coronavirus that originated in Wuhan, China at the end of 2019 and rapidly spread around the world, infecting millions of people, including over 2.15 million Americans. Over 118,000 Americans have died due to COVID-19.

28.     COVID-19 is a physical substance that can cause lethal illness. COVID-19 can be present outside the body in viral fluid particles. COVID-19 is highly contagious and easily communicable through droplets in the air and on surfaces.

29.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. Contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces within the Insured Property.

30.     COVID-19 remains capable of being transmitted on a variety of inert physical surfaces for various periods of time. For example, reports issued by the National Institute of Health ("NIH") indicates that COVID-19 remains stable and transmittable in airborne aerosols for up to three hours, on copper for up to four hours, on cardboard for up to 24 hours, and on plastic and stainless steel for up to two to three days. Moreover, the COVID-19 pandemic has been exacerbated by the fact that the virus physically infects and stays on surfaces of some objects or materials for up to 28 days.

31.     The Center for Disease Control ("CDC") has issued guidance recommending people not to gather in groups larger than 10. Pursuant to CDC guidelines, people face increased danger of contracting COVID-19 in places where people congregate and are in close proximity to one another, and especially in indoor environments.

32.     COVID-19 has been transmitted in a variety of ways, including transmission (a) by way of human contract with surfaces and items of physical property; (b) by human to human contact and interaction, including places like bars and restaurants, retail stores, and hair and beauty salons, and the like; and (c) through airborne particles emitted into the air and even recirculated through air conditioning units.

33.     The presence of COVID-19 particles renders physical property unsafe and impairs its value, usefulness, and/or normal function, causing direct physical harm to property and resulting in direct physical loss and physical damage to property.

34.     The presence of COVID-19 particles and/or the presence of persons infected with COVID-19 or carrying COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and/or normal function, and resulting in direct physical loss to and of the premises and property.

C. *The Covered Cause of Loss*

35.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business (the "Closure Orders").

36.     As of the date this complaint is filed, Florida had over 159,000 total positive cases of COVID-19.

37.     In response to the public health emergency caused by the COVID-19 pandemic, civil authorities across the United States, including the civil authorities with jurisdiction over Plaintiff in Florida have issued Closure Orders restricting and prohibiting access to Plaintiff's insured property and the insured properties of other putative class members.

38.     In Florida, between March 1, 2020 and June 17, 2020, Governor DeSantis issued dozens of executive orders concerning COVID-19. In a piecemeal fashion, different sectors of the Florida economy were gradually closed. *See* https://www.flgov.com/covid-19-executive-orders/.

39.     On March 1, 2020, the Florida Department of Health was ordered to issue a Public Health Emergency due to COVID-19.

40.     On March 9, 2020, Governor DeSantis issued Executive Order 20-52, declaring a Florida State of Emergency due to COVID-19.

41.     In south Florida, local orders were even stricter than those issued by the State and often were issued earlier. For example, Miami-Dade County was an early advocate for stricter measures, issuing orders on March 16 and 17, 2020 which required congregate meal sites, community centers, food service establishments, movie theaters, playhouses, and general gathering places to close. The Governor issued Executive Order 20-70 on March 17, 2020 ordering Broward and Palm Beach counties to enact corresponding closures. Within the following week, Miami-Dade, Broward, and Palm Beach Counties would enact a variety of measures intended to make people stay at home and close all non-essential retail and commercial establishments.

42.     On March 19, 2020, Miami-Dade County Mayor issued Emergency Order 07-20 which closed all non-essential retail and commercial establishments, including Plaintiff's business.

43.     On March 24, 2020, Governor DeSantis issued Executive Order 20-83, directing the State Surgeon General and State Health Officer to issue public health advisories urging high-risk populations to stay home due to COVID-19, urging against all social or recreational gatherings of 10 or more people, and advising those who can work remotely to do so.

44.     On March 30, 2020 Governor DeSantis issued Executive Order 20-89, placing additional restrictions on public access to non-essential retail and commercial establishments in Miami-Dade, Broward, Palm Beach, and Monroe Counties.

45.     On April 1, 2020, Governor DeSantis issued Executive Order 20-91, requiring high-risk individuals to stay at home and ordering all persons in Florida to limit their movement and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential activities. The "Safer At Home" order limits all people's

movements to essential activities and excluded non-essential businesses from operating if unable to perform social distancing.

46.     On April 29, 2020, Governor DeSantis issued Executive Order 20-112, establishing a plan for the Phase 1 reopening of Florida. Pursuant to this order, which went into effect on May 4, 2020, there was some easing of restrictions on businesses restricted by previous executive orders, such as Plaintiff's business; however, various measures continued in place which placed a limit on the income that the business could generate.

47.     Closure Orders containing statements recognizing that COVID-19 causes business income loss and loss of property and property damage have been issued by many Florida counties, including Broward, Escambia, Gadsden, Hillsborough, Martin, Orange, Osceola, Pinellas, St. Lucie, and Walton Counties. See Broward Cnty. Administrator's Emergency Order 20-01 ("this Emergency Order is necessary because of the propensity of the virus to spread person to person and also because the virus is physically causing property damage due to its proclivity to attach to surfaces for prolonged periods of time."); Escambia Cnty. Res. 2020-37 ("COVID-19 and infection diseases have the capacity to pose a significant, imminent, and dangerous threat to the health, safety, and welfare of the inhabitants of Escambia County, Florida, visitors and tourists to Escambia County, Florida, as well as to their real and personal property . . . the COVID-19 virus has the propensity to attach to surfaces for prolonged periods of time, thus causing property damage and continuing the spread of the virus.") (emphasis added); Gadsden Cnty. Res. 2020-014 ("there is reason to believe that COVID-19 is spread amongst the population by various means of exposure, including the propensity to spread person to person and the propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing increased infections to persons, and property loss and damage in certain circumstances.")

(emphasis added); Hillsborough Cnty. Exec. Order dated March 27, 2020 (stating COVID-19 is "creating property or business income loss and damage"); Martin Cnty. Emergency Order 20-04 (stating COVID-19 is "creating property or business income loss and damage"); Orange Cnty. Emergency Executive Order No. 2012-12 (stating that "COVID-19 is spread amongst the population by various means of exposure, including the propensity to spread person to person and the propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing increased infections to persons"); Osceola Cnty. Emergency Order No. 2 (stating COVID-19 causes a "serious threat to life and property within the County") (emphasis added); Pinellas Cnty. Res. 20-20 (stating COVID-19 causes "property loss and damage"); St. Lucie Cnty. Order dated March 31, 2020 ("COVID-19 is causing property damage and business income loss due to its proclivity to attach to surfaces for prolonged periods of time and thereby creating a dangerous physical condition; and [a]s a governmental civil authority action, it is necessary to impose the regulations and restrictions set forth herein in response to the dangerous physical conditions that currently exist and to stop the COVID-19 virus from spreading."); Walton Cnty. Resolution 2020-10 ("the novel coronavirus physically is causing property damage due to its proclivity to attach to surfaces for prolonged periods of time.").

48.     Closure Orders containing similar statements recognizing that COVID-19 causes business income loss and loss of property and property damage have also been issued by many Florida municipalities, including City of Aventura, City of Coral Springs, Town of Indian Shores, City of Lauderdale Lakes, City of Miami, City of North Miami, City of Oakland Park, City of Sarasota, and City of Venice. *See* City of Aventura Order dated March 24, 2020 (explaining the COVID-19 "virus physically is causing property damage due to its proclivity to attach to surfaces for prolonged periods of time"); City of Coral Springs Emergency Order 2020-11 ("COVID-19

attaching to surfaces contaminates the area and therefore also causes property damage . . . the virus physically is causing property damage"); Town of Indian Shores Resolution 05-2020 ("the COVID-19 virus has the propensity to attach to surfaces for prolonged periods of time, thus causing property damage and continuing the spread of the virus."); City of Lauderdale Lakes Emergency Order 2020-01 ("the virus physically is causing property damage due to its proclivity to attach to surfaces for prolonged periods of time."); City of Miami Decl. of a State of Emergency dated March 26, 2020 ("COVID-19 may be spread amongst the population by various means of exposure, including the propensity to spread person-to-person and the propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing property loss and damage in certain circumstances"); City of North Miami "Safer at Home" Emergency Order ("this Order is given because of the propensity of the virus to spread person to person and also because the virus is physically causing property damage due to its proclivity to attach to surfaces for prolonged period of time."); City of Oakland Park Proclamation 2020-002 ("This Order is given because of the propensity of the virus to spread person to person and also because the virus physically is causing property damage due to its proclivity to attach to surfaces for prolonged period of time."); City of Sarasota Emergency Order dated May 1, 2020 ("the COVID-19 virus has the propensity to attach to surfaces for prolonged periods of time, thus causing property damage and continuing the spread of the virus"); City of Venice Executive Order 2020-01 ("COVID-19 has the propensity to attach to surfaces for prolonged periods of time, thus causing property damage and continuing the spread of the virus").

49.     Some state courts have already agreed with Plaintiff's position that physical loss and damage exists resulting in coverage here. *See Friends of DeVito, et. al v. Wolf*, No. 68 MM 2020 (Pa. April 13, 2020). Furthermore, orders issued in states such as New York, Colorado,

Washington, Indiana, New Mexico, North Carolina, Missouri, and Illinois have all recognized that COVID-19 poses a specific threat to property and can cause property loss and damage.

50.     The Closure Orders issued by civil authorities covering non-essential businesses in Florida (such as Plaintiff's) are similar to Closure Orders that have been issued nationwide by state and local civil authorities.

51.     The presence of COVID-19 caused direct physical loss of and/or damage to the Insured Property under the Policy by, among other things, damaging the property, denying access to the property, preventing customers and patients from physically occupying the property, causing the property to be physically uninhabitable by customers and patients, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises.

52.     The Closure Orders of civil authorities prohibited access to Plaintiff and other class members' Insured Properties, and the areas immediately surrounding the Insured Properties, in response to dangerous physical conditions resulting from a covered cause of loss.

53.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and other class members sustained a suspension of business operations, sustained losses of business income, and incurred extra expenses.

54.     Plaintiff's losses and expenses have continued through the date of filing this action.

55.     Plaintiff's losses and expenses are not excluded from coverage under the Policy. Because the Policy is an all-risk policy and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

56.     Consistent with the terms and procedures of the Policy, Plaintiff submitted a claim for loss to Defendant under the Policy due to the presence of COVID-19 and the shutdown Civil Authority orders.

57.     In violation of the Policy's plain language and its own contractual obligations, Defendant denied Plaintiff's claim and refuses to pay for Plaintiff's losses and expenses.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

59.     Plaintiff seeks to represent nationwide classes defined as:

    a.   All persons and entities with Business Income coverage under a property insurance policy issued by Defendant that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

    b.   All persons and entities with Civil Authority coverage under a property insurance policy issued by Defendant that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

    c.   All persons and entities with Extra Expense coverage under a property insurance policy issued by Defendant that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their property insurance policy (the "Extra Expense Declaratory Judgment Class").

60.     Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves

the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

61.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

62.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

63.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class Members, including, without  limitation:

    a.   Defendant issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class Members;

    b.   whether the Class suffered a covered loss based on the common policies issued to members of the Class;

    c.   whether Defendant wrongfully denied all claims based on COVID-19;

    d.   whether Defendant's Business Income coverage applies to a suspension of business caused by COVID-19;

e.  whether Defendant's Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

f.  whether Defendant's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g.  whether Defendant has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

h.  whether Plaintiff and the class are entitled to an award of reasonable attorney fees, interest and costs.

64.  **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class Members' claims because Plaintiff and the other Class Members are all similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, and Extra Expense coverages. Plaintiff's claims are based upon the same legal theories as those of the other Class Members. Plaintiff and the other Class Members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

65.  **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other Class Members who it seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The

interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and their counsel.

66.     **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, and Extra Expense coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class Members, who are not parties to this action, to protect their interests.

67.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members.

68.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
#### (Claim Brought on Behalf of the Business Income Declaratory Judgment Class)

69.     Plaintiff repeats and realleges Paragraphs 1–68 as if fully set forth herein.

70.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

71.     Plaintiff's policy with Defendant, as well as those of the other Business Income Declaratory Judgment Class Members, are contracts under which Defendant were paid premiums in exchange for its promise to pay Plaintiff and the other Business Income Declaratory Judgment Class Members' losses for claims covered by the policy.

72.     Plaintiff and the other Business Income Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiff and the other Business Income Declaratory Judgment Class Members are entitled.

73.     Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

74.     An actual case or controversy exists regarding Plaintiff and the other Business Income Declaratory Judgment Class Members' rights and Defendant's obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff

and the other Business Income Declaratory Judgment Class Members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

75.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.    Plaintiff and the other Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.    Defendant is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT II
## DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE
### (Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)

76.    Plaintiff repeats and realleges Paragraphs 1–68 as if fully set forth herein.

77.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

78.    Plaintiff's insurance policy with Defendant, as well as those of the other Civil Authority Declaratory Judgment Class Members, are contracts under which Defendant were paid premiums in exchange for their promise to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members' losses for claims covered by the policy.

79.     Plaintiff and the other Civil Authority Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class Members are entitled.

80.     Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

81.     An actual case or controversy exists regarding Plaintiff and the other Civil Authority Declaratory Judgment Class Members' rights and Defendant's obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class Members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

82.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a. Plaintiff and the other Civil Authority Declaratory Judgment Class Members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b. Defendant is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class Members the full amount of the Civil Authority losses incurred and

to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT III
## DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)

83.     Plaintiff repeats and realleges Paragraphs 1–68 as if fully set forth herein.

84.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

85.     Plaintiff's insurance policy with Defendant, as well as those of the other Extra Expense Declaratory Judgment Class Members, are contracts under which Defendant were paid premiums in exchange for their promise to pay Plaintiff and the other Extra Expense Declaratory Judgment Class Members' losses for claims covered by the policy.

86.     Plaintiff and the other Extra Expense Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendant, or Defendant is estopped from asserting them, and yet Defendant has abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class Members are entitled.

87.     Defendant has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

88.     An actual case or controversy exists regarding Plaintiff and the other Extra Expense Declaratory Judgment Class Members' rights and Defendant's obligations under the policies to

reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class Members for the full amount of Extra Expense losses incurred by Plaintiff in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

89.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a. Plaintiff and the other Extra Expense Declaratory Judgment Class Members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b. Defendant is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class Members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class Members, respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a. Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b. Entering declaratory judgments on Counts I–III in favor of Plaintiff and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, and the Extra Expense Declaratory Judgment Class, as follows:

i.   Business Income, Civil Authority, and Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.  Defendant is obligated to pay for the full amount of the Business Income, Civil Authority, and Extra Expense losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

c.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

d.  Ordering Defendant to pay attorneys' fees and costs of suit; and

e.  Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: July 2, 2020                    Respectfully submitted,


By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Adam A. Schwartzbaum
Florida Bar No. 93014
adams@moskowitz-law.com
Howard M. Bushman
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601

Coral Gables, FL 33134
Telephone: (305) 740-1423


William F. "Chip" Merlin, Jr.
cmerlin@MerlinLawGroup.com
New Jersey Bar No.  055182013
Florida Bar No.   364721
Shane Smith
ssmith@MerlinLawGroup.com
Florida Bar No. is 53130
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd.,
Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692